HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BROADCAST MUSIC, INC., et al.,

    Plaintiffs,

  v.

BENCHLEY VENTURES, INC., et al.,

    Defendants.

CASE NO. C14-1023RAJ

ORDER

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment. As set forth below, the Court hereby **GRANTS** Plaintiffs' Motion.

## II.   BACKGROUND

Plaintiff Broadcast Music, Inc. ("BMI") is a performing rights society, which has been granted the right to license the public performances rights on behalf of the copyright owners for certain copyrighted musical compositions. *See* Compl. ¶ 3; Dkt. # 24 (Lloyd Decl.) ¶ 2; *see also Broad. Music, Inc. v. Colombia Broad. Sys., Inc.*, 441 U.S. 1, 4 (1979); *Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1124 (D. Ariz. 2013). The other Plaintiffs are copyright owners of various compositions which are at issue in this action. *See* Dkt. # 24 (Lloyd Decl.) ¶¶ 3-4. BMI has acquired non-exclusive public performance rights from each of the other Plaintiffs, as well as the right to maintain actions for infringement of those rights. *Id.* ¶¶ 2, 5. BMI alleges that Defendants have infringed 9 works. *See* Compl. Schedule; Dkt. # 24-1 (Lloyd Decl.) Ex.

ORDER – 1

A. Plaintiffs have presented evidence that they are the registered owners of the copyrighted works at issue. *See* Dkt. # 24-2 (Lloyd Decl.) Ex. B. BMI has presented evidence establishing that it has been granted the right to license public performances of these works. *See* Dkt. # 24 (Lloyd Decl.) ¶ 5.

Defendant Benchley Ventures, Inc. ("Benchley Ventures") is a Washington corporation which operates, maintains, and controls a restaurant in Enumclaw, Washington called the City Hall Saloon & Eatery ("City Hall Saloon"). *See* Compl. ¶ 18; Answer ¶ 1.1; *see also* Dkt. # 31 (Shawn Benchley Decl.) at 2.[1] In connection with that business, Benchley Ventures publicly performs musical compositions or causes them to be publicly performed. *See* Compl. ¶ 19; Answer ¶ 1.1. Defendants Jeff and Shawn Benchley (collectively, "the Benchleys") own Benchley Ventures. *See* Compl. ¶¶ 22, 24; Answer ¶ 1.1; Dkt. # 31 (Shawn Benchley Decl.) at 1-2.

Between August 2012 and June 2014, BMI informed the Defendants numerous times of the need to obtain permission for public performances of copyrighted music. *See* Dkt. # 23 (Mullaney Decl.) ¶¶ 4, 6-8, 10, 14-5, Exs. B-D, G-H. In these letters, BMI offered Defendants numerous opportunities to acquire a BMI license to publicly perform copyrighted works. *See* Dkt. # 23-1 (Mullaney Decl.) Ex. B at 4-9. It appears that by May 22, 2013, Defendants had yet to enter into a license agreement and, accordingly, were instructed to cease all public performances of music licensed by BMI. *See id.* Ex. B at 10, Ex. C & D (cease and desist letters from June 13, 2013 to June 4, 2014).

A BMI investigator, Judy Phelps, was subsequently authorized to visit City Hall Saloon to make an audio recording and written reports of the music being publicly performed at City Hall Saloon. *See* Dkt. # 23 (Mullaney Decl.) ¶¶ 12-13. On April 19, 2014 and May 24, 2014, Ms. Phelps chronicled public performances at City Hall Saloon

---

[1] "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1197 n.6 (2013) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). Defendants' statements in their Answer remain binding on them and this Court because they have not filed an amended answer.

ORDER – 2

by bands called "Crush" and "The Protectors" of songs owned by Plaintiffs and generated written reports detailing as much. *See id.* ¶¶ 12-13, Exs. E & F.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### IV.  ANALYSIS

a.  <u>Plaintiffs' Requests for Admissions</u>

As a preliminary matter, the Parties dispute whether Defendants properly served responses to Plaintiffs' Requests for Admissions. *See* Dkt. # 31-1; Dkt. # 32; *see also* Dkt. # 27. Plaintiffs served Defendants with copies of their Requests for Admission on November 17, 2014. *See* Dkt. # 22 (Case Decl.) ¶¶ 2-5, Exs. A-F. Plaintiffs contend that they never received any response or request for an extension. *Id.* ¶¶ 6-7.

Defendants filed responses – purportedly served on December 17, 2014 – as an attachment to Defendant Shawn Benchley's declaration in support of their opposition.

ORDER – 3

*See* Dkt. # 31-1 at 18.  But there is no indication in Shawn Benchley's declaration as to how she would have personal knowledge of when these responses were served, only that she worked with Defendants' counsel's legal assistant to complete responses in December 2014.  *See* Dkt. # 31 (Shawn Benchley Decl.) at 3.

Plaintiffs deny ever receiving these answers and imply that Defendants' counsel has instead recently completed and backdated the responses to avoid summary judgment. *See* Dkt. # 32 at 12; Dkt. # 33 (Case Decl.) ¶¶ 2-4; Dkt. # 35 (Tracy Decl.) ¶¶ 2-4.[2]

If true, such accusations are deeply troubling and seriously implicate Defendants' counsel's duty of candor toward the Court.  *See* Wash. RPC 3.3.  Whatever the truth of the matter, because the Court does not rely on the Requests for Admission, it declines to address this issue at this juncture.  However, the Court takes this opportunity to remind counsel that any violation of their ethical and professional duties may subject them to discipline by this Court.  *See* Local Rules W.D. Wash. LCR 83.3(c).

    b. Plaintiffs' Copyright Infringement Claim

Generally, to establish a claim for copyright infringement a plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012) (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006)).  "'The word 'copying' is shorthand for the infringing of any of the copyright owner's [six] exclusive rights,' one of which is the right 'to perform the copyrighted work publicly.'"  *Id.* at 1153-54 (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989)) (alteration in original); *see also* 17 U.S.C. § 106(4).

---

[2] Ordinarily, a court may not consider new evidence presented in a reply to a motion for summary judgment unless the non-movant is given an opportunity to respond.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).  Where evidence is presented solely in response to an argument raised in a party's opposition and where a party fails to otherwise object to the consideration of the evidence presented in reply, a court may consider that evidence.  *See Head v. Kommandit-Gesellschaft MS San Alvaro Offen Reederei GMBH & Co.*, 17 F. Supp. 3d 1099, 1108 n.11 (W.D. Wash. 2014).  Plaintiffs' evidence is aimed at rebutting Defendants' supposed service of their responses to Plaintiffs' Requests for Admissions within the statutory period and Defendants have not objected to their admission in the month since the reply was filed.

ORDER – 4

There is little question regarding the validity of Plaintiffs' copyrights. Plaintiffs provide abundant documentary proof of the chains of ownership relating to each of the musical compositions at issue in this action and BMI's licenses for each. *See* Dkt. # 24 (Lloyd Decl.) ¶ 4, Ex. B. Defendants do not provide any evidence disputing the validity of Plaintiffs' ownership or the validity of the licenses to BMI.

Plaintiffs also provide evidence establishing that Benchley Ventures "copied" the work by publicly performing the nine works at City Hall Saloon. Plaintiffs present "certified infringement reports" and declarations from their investigators from April 19 and May 24, 2014 evidencing that the works were performed at City Hall Saloon on those dates. *See* Dkt. # 23-1 (Mullaney Decl.) Exs. E-F. Other courts have routinely accepted such reports as evidence of infringement. *See Range Road Music, Inc.*, 668 F.3d at 1153 (holding that district court did not err in relying on investigator's report and declaration to prove infringement); *McDade & Sons, Inc.*, 928 F. Supp. 2d at 1127-28; *Broad. Music, Inc. v. Kiflit*, No. 12–CV–00856–LHK, 2012 WL 4717852, at *1-2 (N.D. Cal. Oct. 2, 2012). Plaintiffs have provided sufficient evidence to establish the absence of a genuine issue of material fact as to the second element for copyright infringement.

The burden therefore shifts to Defendants to point to specific facts showing a genuine issue of fact exists. *See Anderson*, 477 U.S. at 250. They have not done so. Defendants do not present any evidence to dispute whether the infringing performances actually took place at City Hall Saloon. At best, Shawn Benchley disclaims any knowledge of specific instances of infringement. *See* Dkt. # 31 (Shawn Benchley Decl.) at 2. That alone is insufficient to create a genuine issue of material fact.

Defendants also contend that they have a license agreement with ASCAP, which may have authorized their performance.[3] *See id.* at 4-5. However, Defendants provide

---

[3] Defendants also argue that they had a licensed jukebox at their establishment. *See* Dkt. # 29 at 9; Dkt. # 31 (Shawn Benchley Decl.) at 3. Whether Defendants' jukebox was licensed or not is irrelevant as Plaintiffs' claims stem solely from the unlicensed public performance of copyrighted music by live bands. See Dkt. # 23 (Mullaney Decl.) ¶¶ 12-13, Exs. E & F.

ORDER – 5

1   no supporting documentation, much less the actual license, nor do they explain whether
2   the infringed songs are part of ASCAP's repertoire.  Plaintiffs attach what appears to be
3   an unexecuted ASCAP license and invoice for City Hall Saloon and explain that it was
4   forwarded to them by Defendants' counsel on July 22, 2015, weeks after the discovery
5   cutoff.  *See* Dkt. # 33 (Case Decl.) ¶ 10, Ex. E; Dkt. # 20.  Such is not enough to create a
6   genuine issue of fact, particularly as Defendants offer little argument as to its relevance,
7   much less actually provide the document to the Court. [4]  *See* Dkt. # 29 at 10.

8   Plaintiffs have established both elements for copyright infringement.
9   Accordingly, the Court **GRANTS** summary judgment as to Benchley Ventures on
10  Plaintiffs' copyright infringement claims.

   c.   Whether the Benchleys Are Individually Liable

   The Benchleys argue that they are not individually liable for any copyright
infringement that took place at City Hall Saloon.  *See* Dkt. # 29 at 9.  They cite two
Washington state cases pertaining to officer liability for corporate acts and piercing the
corporate veil, neither of which is particularly relevant here.  *See id.* at 9-10 (citing
*Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689 (Wash. 1982); *Truckweld
Equip. Co., Inc. v. Olson*, 618 P.2d 1017 (Wash. Ct. App. 1980)).  The Benchleys also
present Shawn Benchley's declaration stating, *inter alia*, that neither of the Benchleys
have an active role in "various aspects of our tavern and restaurant business."  *See* Dkt. #
31 at 2.  Instead, the Benchleys contend that they delegated all musical performance
decisions to Max Renshaw, who they maintain – without any documentation or evidence
from Mr. Renshaw himself – is affiliated with both ASCAP and BMI.  *Id.* at 2, 4.

   Plaintiffs argue that the Benchleys are liable under a theory of vicarious
infringement.  To show vicarious copyright infringement, a plaintiff must show "that the
defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct

---

[4] Ordinarily, an original or "duplicate" of a writing is required to prove its contents.  *See* Fed. R. Evid. 1002.  A trial court may only consider admissible evidence in ruling on a motion for summary judgment.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).
ORDER – 6

financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-62 (9th Cir. 1996)).

There is little question that Plaintiffs have met their burden of establishing both elements and the Benchleys have not presented any evidence to create a genuine issue.

The Benchleys clearly have a direct financial interest in Benchley Ventures, the primary infringer. The Benchleys admit that they own Benchley Ventures, which operates City Hall Saloon. *See* Compl. ¶¶ 18, 22, 24; Answer ¶ 1.1; Dkt. # 31 (Shawn Benchley Decl.) at 1-2. And Plaintiffs have presented evidence that the Benchleys are the owners and officers of Benchley Ventures. *See* Dkt. # 23-1 (Mullaney Decl.) Ex. A. Given that "[f]inancial benefit exists where the availability of infringing material 'acts as a draw' for customers," (*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (quoting *Fonovisa*, 76 F.3d at 263-64) (internal quotation marks omitted)), Plaintiffs clearly have established that the Benchleys have a direct financial interest in the infringing conduct – the public performances of infringing works at City Hall Saloon. The Benchleys have presented no evidence that they do not derive any financial benefits from the infringing activity. In fact, they appear to admit as much, stating that they may "lose [their] customers who enjoy listening to live music" if they do not pay for a license. *See* Dkt. # 31 (Shawn Benchley Decl.) at 6; *see also* Compl. ¶¶ 22, 24; Answer ¶ 1.1 (admitting that the Benchleys have a direct financial stake in Benchley Ventures).

The next question is whether the Benchleys have the right and ability to supervise the infringing conduct. *See Perfect 10, Inc v. Visa Int'l Serv. Ass'n.*, 494 F.3d at 802. "A defendant 'exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'" *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005)). Plaintiffs point to the Benchleys' own Answer as an admission that they have the right to supervise

ORDER – 7

1    and control the activity at City Hall Saloon.  *See* Compl. ¶¶ 22, 24; Answer ¶ 1.1
2    (admitting that the Benchleys have "the right and ability to supervise the activities of
3    Defendant Benchley Ventures, Inc."). The Benchleys' admissions in their Answer
4    remain, of course, conclusively binding on them. *Amgen, Inc.,* 133 S. Ct. at 1197 n.6.

5    Nevertheless, the Benchleys appear to now contest their judicial admissions,
6    arguing that they delegated all decisions regarding musical performances to Mr.
7    Renshaw. *See* Dkt. # 31 (Shawn Benchley Decl.) at 2-4. But the fact that the Benchleys
8    delegated this authority to Mr. Renshaw itself demonstrates that they had the requisite
9    authority to supervise the infringing conduct, particularly as it suggests they could
10   remove Mr. Renshaw from this position at any point. And the Benchleys also admit that
11   they ensure that all musical performers are paid, suggesting that not all responsibility is
12   vested in Mr. Renshaw. *See id.* at 4 ("Max tells our staff the amount the groups are
13   charging (usually per night) and we make sure that the performers are paid"). Such is not
14   enough to defeat summary judgment.

15   The law is clear. Proprietors of restaurants and other establishments are routinely
16   held liable for copyright infringement occurring on their premises even where they do not
17   directly control the content of the music performances. *See e.g., Range Road Music, Inc.*,
18   668 F.3d at 1154-55 (holding that individual defendant was liable for infringing conduct
19   where he admitted that he had managerial authority over establishment, including power
20   to hire and fire employees); *McDade & Sons, Inc.*, 928 F. Supp. 2d at 1133-34; *Broad.*
21   *Music, Inc. v. Blueberry Hill Family Rests., Inc.*, 899 F. Supp. 474, 480-81 (D. Nev.
22   1995); *Foreverendeavor Music, Inc. v. S.M.B., Inc.*, 701 F. Supp. 791, 793-94 (W.D.
23   Wash. 1988); *see also Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*, No. C10-380Z, 2011
24   WL 3360664, at *2 (W.D. Wash. Aug. 3, 2011).

25   The Court **GRANTS** Plaintiffs' motion for summary judgment and finds that the
26   Benchleys are jointly and severally liable as vicarious infringers for Benchley Ventures'
27   copyright infringement.
28   ORDER – 8

d.  Defendants' Other Arguments

Defendants make three other arguments.  The Court rejects all three.

First, Defendants argue that they have created a genuine issue of material fact as to whether the infringement in question was willful because they hired Mr. Renshaw to oversee musical performances at City Hall Saloon.  *See* Dkt. # 29 at 12.  A determination of willfulness is no longer necessary as Plaintiffs request damages within the range of statutory damages permitted without a finding of willfulness.[5]  *See* Dkt. # 21 at 11-14.

Second, Defendants argue that their newly proposed allegations of BMI's violations of various antitrust statutes and consent decrees create a genuine issue of material fact for trial.  *See* Dkt. # 29 at 10-12.

Amended pleadings in this action were due May 6, 2015 (Dkt. # 20), nearly two and a half months prior to Defendants' apparent belated effort to include antitrust allegations (*see* Dkt. # 29).  Once the Court enters a scheduling order, it may be amended only for "good cause" and with the Court's approval.  *See* Fed. R. Civ. P. 16(b)(4); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  Defendants provide little reason why they could not have discovered the basis of this purported counterclaim earlier, particularly given that the cases they cite date to 1964 and have not otherwise provided good cause.  Moreover, "[a] motion for leave to amend is not a vehicle to circumvent summary judgment." *Schlacter-Jones v. Gen. Tel. of Cal.*,

---

[5] Even if willfulness were at issue, Defendants likely have not met their burden to create a genuine issue of fact.  "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).  Plaintiffs plainly have met this burden by presenting comprehensive, if not exhaustive, evidence of their efforts – over two years – to entice, cajole, or otherwise convince Defendants to enter into a licensing agreement with BMI.  *See* Dkt. # 23 (Mullaney Decl.) ¶¶ 4, 6-10, 14-15.  These efforts included numerous letters (*see id.* ¶¶ 4-8, Exs. B-D), 59 telephone calls from BMI representatives (*id.* ¶¶ 9-10), and overnight letter cease and desist notices (*id.* ¶¶ 7-8, Exs. C-D).  At least one of these notices was accepted by Jeff Benchley himself.  *See id.* Ex. C at 16-17.  Defendants, for their part, merely place the blame on Mr. Renshaw.  Their arguments at best amount to plaintive cries of willful blindness.

ORDER – 9

936 F.2d 435, 443 (9th Cir. 1991). As such, to the extent Defendants seek leave to add a counterclaim, that request is denied.

Finally, Defendants appear to argue that they have presented sufficient evidence to create a genuine issue of material fact as to an affirmative defense for "misconduct in commerce" based on *Litton v. Honeywell,* CV 90-93 MRP, 1995 WL 366468 (C.D. Cal. Jan. 6, 1995).[6] Defendants' argument is not entirely coherent, but as best as this Court can decipher, Defendants claim that BMI has acted unfairly by offering expensive license fees. *See* Dkt. # 29 at 10-11. An expensive license fee would not excuse Defendants' infringement. Further, if Defendants truly thought that BMI's licensing fees were unreasonable, they could have filed suit under 17 U.S.C. § 513, a provision specifically added in the Fairness in Music Licensing Act of 1998 to address these concerns. *See* 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.19[B][2].

As Defendants' other arguments fail, the Court finds that Plaintiffs are entitled to summary judgment of their copyright infringement claims against Defendants.

e. Plaintiffs' Relief

Plaintiffs request permanent injunctive relief, statutory damages for each claim of infringement, costs, and reasonable attorneys' fees. *See* Compl. at 6; Dkt. # 21 at 10-14. All three forms of relief are commonly awarded in performing rights cases. *See* 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.19[B] (Matthew Bender, Rev. Ed. 1992).

i. Permanent Injunctive Relief

Pursuant to 17 U.S.C. § 502(a), the Court may grant "final injunctions . . . to prevent or restrain infringement of a copyright." "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of

---

[6] *Litton* is plainly inapplicable as it involved patent infringement and the "misconduct" at issue was to a claim of intentional interference with prospective economic advantage. *See Litton*, 1995 WL 366468 at *50. Whatever other propositions the case may stand for, it certainly does not apply in the instant suit.

ORDER – 10

continuing violations." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (citing *Nat'l Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 732 (8th Cir. 1986)).

Plaintiffs have established such a threat here. Defendants continued to infringe even though they have been repeatedly notified that they were doing so and given repeated notices to cease and desist the behavior. *See* Dkt. # 23 (Mullaney Decl.) ¶¶ 4, 6-10, 14-15. To date, Defendants have yet to execute a license with BMI and there is little reason to believe they will, given their ongoing recalcitrance. *Id.* ¶ 17.

In similar cases, Ninth Circuit courts have granted permanent injunctions. *See e.g., McDade & Sons, Inc.*, 928 F. Supp. 2d at 1136; *Broad. Music, Inc. v. TLM Invs., P.L.C.*, No. CV 09-8131-PCT-JAT, 2010 WL 2891524, at *8 (D. Ariz. July 21, 2010); *Odnil Music Ltd. v. Katharsis LLC*, No. CIV S-05-0545 WBSJFM, 2006 WL 2545869, at *9 (E.D. Cal. July 21, 2006). This Court sees little reason to depart in this case. Accordingly, the Court will grant Plaintiffs' request for a permanent injunction.

           ii.      Statutory Damages

Under 17 U.S.C. § 504(c)(1), the Court may award statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" for each infringed work. Statutory damages "serve both compensatory and punitive purposes" so as "to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Serv. v. Reuters Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quoting *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990)). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984).

Consequently, courts routinely award statutory damages that exceed the amount of unpaid license fees. *See McDade & Sons, Inc.*, 928 F. Supp. 2d at 1135; *see also* 2 Melville B. Nimmer & David Nimmer, *supra*, § 8.19[B] n.60 (listing representative

ORDER – 11

awards in performing rights society cases). In these cases, "courts routinely award three times the amount of a properly purchased license for each infringement." *Broad. Music, Inc. v. JMN Rest. Mgmt. Corp.*, No. 14-CV-01190-JD, 2014 WL 5106421, at *3 (N.D. Cal. Oct. 10, 2014) (quoting *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994)); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991).

Plaintiffs request an award of $27,000.00 (*see* Dkt. # 21 at 13) or roughly one and a half times the amount of a properly purchased license (*see* Dkt. # 23 (Mullaney Decl.) ¶ 18 (listing license fees of $5,934.00 between August 2012 and July 2013, $6,127.50 between August 2013 and July 2014, and a current annual license fee of $6,256.00). The Court finds Plaintiffs' requested relief to be appropriate, particularly as it would put Defendants "on notice that it costs less to obey the copyright laws than to violate them." *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985).

### iii. Attorneys' Fees and Costs

Finally, Plaintiffs request that the Court award their attorneys' fees and costs. *See* Dkt. # 21 at 14. Pursuant to 17 U.S.C. § 505, the Court may "in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party." Defendants do not make any argument regarding the reasonableness of fees or whether costs should be awarded.

Courts may consider several factors in making an attorneys' fee determination under the Copyright Act, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence." *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)).

All factors weigh in favor of Plaintiffs. They have achieved complete success on their meritorious claims in an effort to enforce their valid copyrights. Moreover, Defendants' actions in this case were plainly unreasonable – it appears that they only appeared in this action after default had been entered against them (*see* Dkt. # 11, 12),

ORDER – 12

1  failed to comply with their discovery obligations (*see* Dkt. # 22 (Case Decl.) ¶¶ 2, 6-7),
2  continued to delay, even after the filing of the instant motion (*see* Dkt. # 26), and
3  ultimately failed to present any of the evidence they suggested they needed to investigate
4  in support of their request for a continuance (*see* Dkt. # 25 at 2).  Finally, a fee award
5  would advance the purposes of the Copyright Act by compensating Plaintiffs and
6  deterring the Defendants' unreasonable behavior.  Defendants were informed time and
7  time again of the need for a license yet repeatedly refused to engage with BMI.

8        Courts begin with a "lodestar" method in calculating reasonable attorneys' fees,
9  which is obtained by multiplying the number of hours reasonably expended on the
10 litigation by an hourly rate.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978
11 (9th Cir. 2008).  Plaintiffs have proposed a fee award of $7,500, which is a flat fee for
12 Plaintiffs' counsel's work.  *See* Dkt. # 22 (Case Decl.) ¶ 8.  Plaintiffs' counsel explains
13 that he has spent roughly 30.6 hours working on the matter and that his hourly rate was
14 $265 in 2014 and $290 in 2015.  *Id.*  Plaintiffs also provide detailed billing records for
15 their counsel's work.  *Id.* Ex. G.  Plaintiffs' requested attorneys' fees are more than
16 reasonable, especially as compared to other attorneys' fee awards within this district.  *See*
17 *e.g.*, *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, No. C13-1975-MAT, 2015
18 WL 2124933, at *6 (W.D. Wash. May 1, 2015) (awarding attorneys' fees of $24,290.00
19 in copyright infringement case for 69.4 hours of work at $350 an hour); *Curtis v.*
20 *Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1220-23 (W.D. Wash. 2014).  The Court
21 grants Plaintiffs' request and awards them their reasonable attorneys' fees of $7,500.00.

22       Finally, Plaintiffs request their costs in the amount of $1,032.81.  *See* Dkt. # 22
23 (Case Decl.) ¶ 8.  They provide an itemized list of their expended costs.  *See id.* Ex. H.
24 The Court finds no reason not to award the requested expenses and Defendants do not
25 provide any.  Accordingly, the Court grants Plaintiffs' request and awards them their
26 costs in the amount of $1,032.81.

28 ORDER – 13

### V. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' Motion and enters summary judgment against Defendants. The Clerk will enter judgment for Plaintiffs reflecting this Order.

### VI. PERMANENT INJUNCTION

1. Defendants Benchley Ventures, Inc. d/b/a City Hall Saloon & Eatery, Jeff Benchley, and Shawn Benchley, and their agents, servants, employees, and all persons acting under their permission or authority shall be permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Plaintiff Broadcast Music, Inc.

DATED this 11th day of September, 2015.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 14